## ARBETTER *v.* LEWIS.

PATENTS; INTERFERENCE; CLAIMS AND SPECIFICATIONS; DISLOSURE.

1. Ordinarily in a technical case, this court will accept the views of the expert tribunals of the Patent Office, but if it is apparent that those tribunals are not in harmony upon controlling questions involved, or if the court is satisfied that an incorrect conclusion has been reached, it will consider the case afresh.

2. A limitation in a claim that is merely arbitrary and without function ought not to be permitted to deprive the first inventor of reward, simply because the one first to file an application has inserted it.

3. In an interference involving a hem or seam for sewed articles, in which neither party took testimony on the question of priority, but both relied upon patents granted them on machines for the manufacture of their stitches as showing disclosure, it was *held,* reversing the de-

cision of the Commissioner, that the application of the junior party did not disclose the invention, and that, therefore, the senior party was entitled to an award of priority, the patentability of the claims not being before the court.

No. 620.  Patent Appeals.  Submitted January 18, 1910.  Decided March 1, 1910.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. .                    *Reversed.*

The facts are stated in the opinion.

*Mr. Frederick P. Fish* and *Mr. Nathan Heard* for the appellant.

*Mr. E. E. Huffman* and *Mr. A. C. Fowler* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an interference proceeding in which the three tribunals of the Patent Office have concurred in awarding priority of invention to John G. Lewis, the senior party.

The case is peculiar in that it involves merely a seam or article of manufacture, without reference to the method or process of such manufacture or the machine by the operation of which the article is produced. This fact should be kept in mind, for it has a material bearing, in our opinion, in the consideration of the issue, which is expressed in the following counts:

"1. A hem or seam for sewed articles, consisting of a main layer of textile or similar material and a superimposed layer of material having a turned under edge, and secured to said main layer by two connected rows of locked or enchained stitches entering and emerging at different points on the same side of the work, one of said rows entering under said edge, and said edge lying between the extremities of said stitches.

"2. A hem or seam for sewed articles, consisting of a main layer of textile or similar material and a superimposed layer of material having a turned under edge, and secured to said main layer by two connected rows of locked or enchained stitches entering and emerging at different points on the same side of the goods, one of said rows entering under. said edge; said edge lying between the extremities of said stitches, and one of said rows of stitches being inclined to the edge of said superimposed layers.

"3. A hem or seam for sewed articles, consisting of a main layer of textile or similar material, and one or more superimposed layers of material secured to said main layer by two connected rows of locked or enchained stitches entering and emerging from different points on the same side of the work, one of said rows entering the main layer only and the other row entering under the edge of the superimposed layer or layers.

"4. A hem or seam for sewed articles, consisting of a main layer of textile of similar material, and a superimposed layer or layers secured to said main layer by two connected rows of locked or enchained stitches entering and emerging from different points on the same side of the work, one of said rows entering the main layer only, and the other of said rows entering under the edge of the superimposed layer or layers and piercing said layer or layers only."

The question of the patentability of these claims is not before us, the sole issue, as has been many times held, being priority of invention.

Neither party has taken testimony on the question of priority, each relying upon patents on machines for the manufacture of their respective stitches. Wolf Arbetter's patent, No. 690,385, was granted January 7th, 1902, upon an application filed August 13th, 1901. Lewis's patent, No. 862,830, was granted August 6th, 1907, upon an application filed August 2, 1902, which, it will be observed, was almost one year after Arbetter's filing date. It is apparent, therefore, that if each of these patents constitutes a disclosure of the issue, priority of invention should be awarded Arbetter. We here reproduce Fig. 8 from

Arbetter's patent, upon which he bases his contention that said patent constitutes a disclosure of the issue herein:

We also reproduce Fig. 3 from Lewis's application herein, as an embodiment of his seam:

Whilst the tribunals of the Patent Office, as above stated, were unanimously of the opinion that priority should be awarded Lewis, their views as to the proper interpretation of the issue and the patents upon which each party bases his claim to priority, were quite divergent. Ordinarily in a technical case like

this, we accept the views of the expert tribunals of the Patent
Office. Where, however, it is apparent that these tribunals are
not in harmony upon controlling questions involved, or where we
are satisfied that an incorrect conclusion has been reached, we
deem it our duty to consider the case afresh. We shall, therefore,
in our effort to determine the exact nature of the invention in
controversy, turn to Lewis's application herein, he being the
senior party and the originator of these claims.

Upon the filing of his application, Lewis was notified by the
Patent Office that his claims "fail to define anything patentable
over the patent to Arbetter, 690,385, January 7, 1902, Button-
hole (6), and are rejected thereon." There was no claim in the
original specification that this stitch resulted in the concealment
of either the needle or the bobbin thread. Upon the rejection of
his claims because they contained nothing patentable over Arbet-
ter's patent, Lewis made no mention of the contention he now
makes, but filed an affidavit under rule 75, carrying his date of
invention back of the date of the filing of the application upon
which Arbetter's patent was granted. While this affidavit was
found to be satisfactory, the claims were again rejected upon
Lewis's British method patent, the Office holding that "it is im-
material, so far as the seam is concerned, whether the needle
puncture is parallel with the hem or inclined relative thereto."
To meet this condition, Lewis filed a statement in which ap-
peared the following: "By making the stitches inclined to the
edge two very important advantages are gained: First, by so
inclining the stitches, a very much greater width of overseaming
is secured with the same lateral vibration of the needle. *  *
* In making this form of hem with the straight stitch there is
great liability of pulling the woof from the warp or the warp
from the woof, as the case may be, while with the inclined stitch
the woof and warp are bound together, thus making a much more
durable hem or seam."

Again his claims were rejected and again he filed amendments,
which were in turn rejected. Thereupon, he sought to have his
application amended so that it would contain a reference to the

advantages of making the stitch inclined to the edge of the superimposed layer. This advantage consisted, it was contended, in a wider and stronger seam. Under the head of remarks, Lewis said: "The interlocking of the needle thread of each of the stitches in one of the rows or series with the part of the bobbin thread which lies in the preceding stitch, *masses both the bobbin and needle thread upon the edge of the superimposed layer of material* and thus makes a hem or seam, which, both in appearance and in binding effect upon the edge, is entirely different from anything shown in any of the references." The amendment was incorporated by the Patent Office, but the claims were again rejected, the Office holding "that the mere statement that the needle thread engages a portion of the bobbin thread does not lend patentability to an otherwise old seam." Thereupon, on July 5th, 1906, Lewis filed another amendment, and, in the course of the accompanying remarks, said: "In connection with present claims 6, 7, and 8, it is to be noted that all of these claims contain a limitation which is absolutely novel, namely, that the needle thread of each stitch is interlocked with the portion of the bobbin thread lying in the preceding stitch. This construction enables the threads to be drawn into the fold between the main and superimposed layers, so as to make a much neater hem or seam than could be otherwise obtained, and by sufficient tension on the threads they may be drawn into the fold to such an extent that the stitches are substantially concealed on the wrong side of the hem or seam, as well as on the right side." It is to be noted that Lewis, in this statement, does not contend that either thread would be entirely concealed. His contention is that by drawing the *threads* into the fold the *stitches* would be substantially concealed. After several other rejections the claims were finally held to be in form for allowance, and this interference was thereupon declared.

The Examiner of Interferences ruled that the object of the limitation in the counts, that one of the rows of stitches should enter *under* the edge of the superimposed layer of material, "is the partial concealment of the stitch." He decided against Ar-

better, because "the point at which the needle emerges determines the point at which the thread carried by it will be locked by the bobbin thread," and for the further reason that in Arbetter's construction "one of the stitches emerges just *over* the turned under edge" instead of *entering* just *under* said edge.

The Examiners-in-Chief, in their opinion, said that "the machines of the applicants are essentially different, and the *seams are themselves specifically different,* yet possessing certain features in common." They further said: "It appears that the applicants approached the invention from somewhat different points. Arbetter apparently had in view only a loose imitation of hand felling. In forming his seam the object is to keep it narrow, and show substantially nothing but the bobbin thread appearing only at the points of enchainment with the other thread and the stitches in the main layer of fabric lying close to the edge of the overlapping layer. In forming this seam the needle takes alternately a short stitch parallel to the fell close to the edge thereof in the main body of the fabric, and a diagonal stitch in which the needle enters under the turned-over edge of the fabric between the layers, and emerges through the superposed layer a short distance back from the edge, the bobbin thread caught in the successive stitches passing back and forth over the edge in a zigzag line."

The Examiners-in-Chief then direct attention to the fact heretofore pointed out, that Lewis's application as originally filed contained no reference to his present contention. They then said: "It appears that in Lewis's machine the needle is shifted laterally of the fold between seams, and the inventor found that, by inclining the needle, a greater width of seam is possible with the same amount of bodily lateral motion thereof." The Examiners stated the reasons for their conclusion in favor of Lewis as follows: "In the seam of the patent (Arbetter's Fig. 8) the needle forms alternate stitches in the main layer and the superposed layer. The latter has its edge turned in, and the needle enters it at a point remote from the edge and emerges at a point above or on the folded edge. The stitch in the under layer of fabric is parallel to the edge of the fell. It is clear that the

seam of this patent is different materially from that of either of these applications. Neither of the threads is hidden, and the needle thread appears more prominently than the bobbin thread, the reverse being true in the case of the seam of each of the applications in this interference. The difference appears in each of the issues, which state that one of the rows of stitches enters under the edge of the super-posed fabric. It is argued on behalf of Arbetter that it is immaterial whether it be said that the row enters or emerges under the edge, since the invention here in controversy is a seam independent of the process by which it is formed. To our way of thinking, however, while the language referred to describes the seam with reference to the process of manufacture, it imports a real difference in the seam; that is to say, it fixes the fact that the needle engages the bobbin thread at a point remote from the edge of the super-posed fabric, since the point of engagement of the threads is always at the point of emergence. Further than this Arbetter does not show the stitches either entering or emerging from under the edge."

The Commissioner ruled that "the real question at issue is whether this patent (Arbetter's) shows one of the rows of stitches 'entering under the edge' of the super-posed layer of fabric as called for by the issue." He further said: "In view of the fact that the invention in issue is a seam, in my opinion the words of the counts 'one of such rows (of stitches) entering under' the edge of the folded layer of material does not import into the claim any limitation resulting from the method of manufacture, but that such words must be construed as referring alone to the position which the threads occupy in the finished article. In the seam shown in both the applications involved in interference, the thread lies wholly *under the folded edge.* In the seam shown in Arbetter's patent the thread lies, for the most part, somewhere below the upper fold, but it emerges either at the folded edge or above the folded edge, and hence does not lie under the folded edge. By reason of the fact that the thread emerges either at or above the edge of the fold, the thread of the preceding stitch must lie in an exposed position, whereas in the seam involved in the interference it is concealed beneath the

fold.   For these reasons it is held that appellant's patent, No. 690,385, does not disclose the invention of the issue, and that appellant is not entitled to the benefit of the date thereof."

It is clear that the Commissioner was correct in concluding that the words "one of such rows entering under the folded edge of material" import no limitation resulting from the method of manufacture, since the patent is upon the article itself, and has no reference to the method by which the finished product is produced.   In other words, if the same result is brought about by reversing the position of the needle, it becomes immaterial whether the needle enters or emerges at a given point.   It is equally clear, we think, that the Examiner of Interferences and the Examiners-in-Chief were in error in stating that it makes the slightest difference in the finished product whether the needle enters or emerges at a given point, since it is a matter of common knowledge to those familiar with the operation of a sewing machine that, by regulating the tension device of the machine, the position of the locking point of the thread may be varied without altering the construction of the seam.   That is to say, by manipulating the tension device, it would be impossible to tell, from a subsequent examination of the stitch, whether the needle entered or emerged at a given point.   This was evidently the conclusion of the Commissioner, since he based his decision in favor of Lewis upon the ground that, in the seam of Arbetter's patent, one thread does not lie wholly under the folded edge.

Let us first see whether it is physically possible for one thread in the Lewis seam to lie wholly under the folded edge.   Lewis himself has never so contended.   His first reference to this feature of his seam was contained in the communication he filed July 5th, 1906, nearly three years after the filing of his application.   He there contended that tension would enable the *threads* to be drawn into the fold so as substantially to conceal the stitches.   An examination of his seam, we think, clearly indicates that what he meant was that by tension the threads at the interlocking point would be substantially drawn into the fold, but this would leave the threads of the lower part of the seam

as fully exposed as the thread on the super-posed layer. This must be so, because the point at which the needle enters the base layer is a length of the stitch away from the edge of the super-posed layer, in order to allow the needle to emerge below and without puncturing said edge. No amount of tension could conceal either thread, because of the physical characteristics of the seam.

In Arbetter's patent, as pointed out by the Examiners-in-Chief, it is apparent he was endeavoring to construct a narrow seam, which would in a measure take the place of hand felling. In hand felling the object is to secure the edge of the upper layer of fabric to the lower edge by stitches which show as little as possible on the main layer. He formed his seam by taking a short stitch close to and parallel with the edge of the over-lapping layer. This stitch he alternated with the diagonal stitch.

In Arbetter's Fig. 8 it will be observed that the needle thread at the left apparently passes *under* instead of *over* the bobbin thread. Counsel for Arbetter, during the argument at bar, stated this to be an error due to the failure of the draughtsman to understand the stitch. While we are inclined to sympathize with the draughtsman, we are convinced from an examination of Figs. 6 and 7 of the patent that counsel's contention is correct. We will employ Fig. 8 to demonstrate this. The first thrust of the needle in a complete stitch, according to the specification, is in the folded layer at its edge, the needle is retracted, the bobbin thread having been engaged, and a second thrust is then made in the fabric, close to and parallel with the folded layer. The needle is again retracted, again having engaged the bobbin thread, and moved or swung into position for the next thrust into the upper or folded layer. Necessarily, when the needle is moved from the lower body of the fabric to the upper or folded layer it must pass its thread *over* and not *under* the bobbin thread.

But, it is said, Arbetter's stitches neither enter nor emerge *under* the edge of the folded layer, and hence it is impossible for him entirely to conceal the one thread. We have endeavored

to demonstrate the impossibility of concealing either thread in the Lewis seam; that originally he made no such claim, but on the contrary talked about a *wide overseam,* and the massing of the two threads *upon the edge* of the folded layer, as the features of his seam; and that the most he ever claimed in his amended specification was a partial concealment of *threads.* Surely, if Lewis's seam responds to the issue, so also does Arbetter's. A limitation in a claim that is merely arbitrary and without function ought not to be permitted to deprive the first inventor of reward, simply because the one first to file an application has inserted it. The sole reason assigned for the limitation "under the edge" is concealment of one of the threads; but, if neither seam fully accomplishes that result, manifestly the one in which such result is more nearly accomplished ought not to be put aside for the other. As we view these claims and the seams to which they apply, it is, at least, open to doubt whether this limitation really amounts to anything. If it does we are satisfied that Arbetter's seam responds to it. In his specification he states, and his drawings show, that the upper stitch emerges *at* the edge of the folded layer of material. When we consider that this material is thin, flexible cloth, and when we also consider the effect of tension upon the stitch, it becomes apparent that it can make little, if any, difference whether the stitch enters just *under* or *at* the turned under edge. In either case one thread will be substantially concealed. Moreover, in the Lewis patent upon which he relies for priority, he describes the thrust of the needle as "entering the *edge or underside* of the superimposed material." Manifestly, he did not then think a variation of the needle so slight as not to be perceptible to be at all material.

An examination of the Lewis application through its vicissitudes in the Patent Office convinces us that his present contention was born of a desire to overcome the adverse view of the Primary Examiner to the allowance of any of these claims, and that concealment of either thread was as foreign to his original design as it is impossible of accomplishment in his seam. Moreover, as above suggested, we are convinced that it would make no

practical difference in the finished article whether the needle entered or emerged at a point just below or at the edge of the under-turned layer of material. If we were dealing with a less flexible or a more dense material, the case might be different. There can be no doubt that if the only difference between two seams lay in the fact that the needle in one entered or emerged just below, and the needle in the other at the folded edge of, the under-turned material, one would be held to constitute an infringement of the other. *Westinghouse* v. *Boyden Power Brake Co.* 170 U. S. 537, 42 L. ed. 1136, 18 Sup. Ct. Rep. 707.

For the foregoing reasons the decision of the Commissioner of Patents must be reversed and priority awarded Arbetter. The clerk will certify this opinion to the Commissioner of Patents as by law required.                          *Reversed.*